And it was some sort of evidence about how, how many of those cases they actually are able to recover, and how many they're not. And the truth is, as Goldberger tells you- You're saying they would've had to show we could've made X amount of money from doing something else, and that would justify more fees for doing this case? I think that would be one way to do it, sort of a... That would be the opportunity cost, but I think there's also the, sort of the portfolio risk is what the Fresno County Courts seem to focus on. And I think that's true, that if they came in and said, well, we could've worked on this hourly case where somebody was going to pay us a great deal of money, and I think that would certainly be evidence that would probably be useful and probably be relevant. But I think that what the court seems to be talking about is a more globalized, what is your portfolio risk over your entire catalog of cases? And so I don't think that... So the answer's no. Excuse me. Anything further? Mr. Motley? I do want to point out that this case, and this goes further to Judge Menache's earlier comment, this is a case where, yes, it was in Brazil, and yes, there were issues with that, but it also had a leg up, that there were investigative and judicial proceedings, just like in the Goldberger case. The Goldberger case pointed out, well, this is a notorious fraud. There were investigations, and there were criminal proceedings. Therefore, there wasn't a lot of litigation risk here, not nearly as much as you say. Similar situation here. You've reserved three minutes for rebuttal. Yes, that's right. We'll hear from Mr. Daley. Thank you. Good morning, Your Honors. Joseph Dave Daley for the League of Plaintiffs Appellees. I'm glad to hear counsel say that Fresno County issued guidance. What Fresno County did, actually, was drive a nail through the heart of his appeal. This is his objection down below. It's in the record at ECF 126-1, page four. Here's the bold heading. Class counsel's fee should be limited to Lodestar. That was the crux of his appeal down below. That was the presumption that we should have been limited to our Lodestar, and the court could not grant us a fee award based upon a reasonable percentage of the fund recovered. If we were persuaded that you're not limited to the Lodestar, we've got a fair amount of precedent that suggests that there should be reasons given that we can review. Purdue says enhancing the Lodestar should be rare, exceptional. Bolar says that there should be specific reasons to depart from the Lodestar. And Fresno County, while recognizing leeway to enhance the Lodestar, rejects a routine 25% award. Indeed, it talks about funds under, or funds above 50 to 75 million being more in the 11 to 20% range. So why don't we have to consider whether we have enough explanation here for a 30% enhancement? Well, I would hope, Your Honors, would look over the record and see that Judge Buchwald. There has to be an explanation to go for this high an enhancement, right? Completely agree, and that explanation doesn't necessarily have to be set forth chapter and verse in the fee award. It can be set down in the fee award order. Supplemented by the record. I'm willing to look at the whole record. And the judge told us that she viewed it as a complex case, one in which she devoted a considerable amount of time to the efforts, but is that enough? Not on its own, but then this. What else is there to explain a 30% enhancement, which seems quite high? Well, it's a 2.72 enhancement of the multiplier. The 30% is a reasonable percentage. This court- It's 30% over the Lowe's star, isn't it? No, no, Your Honor. It's- So help me out with the arithmetic. Sure. The fee awarded was a percentage fee. It was 30% of the 50 million that we recovered for the benefit of the class. 30% equaled 15 million. Sorry, yes. Of the common fund. Yes, but- Of the common fund. Okay, go ahead. And then our Lowe's star in the case was $5.5 million and a half a million dollars in expenses, not one penny of which was guaranteed to us. And Judge Buchwald correctly recognized that the case was a risky one to be brought in the beginning, in the first place. Several points to that. Number one, we know it's a securities class action. No matter what Goldberger, this court said in Goldberger some 20 years ago, saying that securities class actions were not necessarily risky. This is in our briefing, but I just do want to remind the panel that Goldberger itself was not a PSLRA case. It was actually begun in 1990, even though that was a year 2000 decision. The PSLRA had not yet come about. Goldberger cited to an old law review article looking at a limited sample of just nine IPO cases and said that these cases are not very difficult to bring and they often settle. Well, that may have been true of that small sample size, but that is not true of these securities class actions as a rule. Since then, we have seen scholarly economic analysis of securities class actions. Fully 45% of them are dismissed with prejudice. Another 30% of them are dismissed, partially dismissed, leaving only 25% to go on to live for another day. The district court- Why do those circumstances warrant a multiplier if a lot of them are dismissed outright? That suggests they shouldn't have been brought to begin with. I beg to differ, Your Honor. I've been up in circuit courts around the country enough defending 12B6 dismissals of these cases to realize that several of them are very, very good cases, but for one reason or the other, just that- A number of, not insignificant number of them don't survive. They may not be being brought by your firm, but the reality, if you're gonna cite the absolute numbers, is that a number of them just can't plead the elements of a securities case. That may be so, Your Honor. I would like to point out this court in Goldberger says that each one of these cases in which a fee award is given, and I'm paraphrasing here, they must be looked at upon their own merits. It's case-by-case analysis. So here, Judge Buchwald was not necessarily locked into giving a multiplier of a certain amount, although this court in Walmart said that a multiplier of 3.5 was, quote, reasonable given the landscape of lodestar multipliers out there. You mentioned earlier, Judge Raji, that Perdue talked about the skepticism with which we look at lodestar multipliers, but I would suggest to Your Honor that that circles back into my friend's position, which has been his position all along, and that is that we are to look to the Supreme Court's fee-shifting cases with their natural skepticism towards enhancing any lodestar for risk, for quality of result, et cetera, but that's not what happens in these common fund cases. This court has said in Goldberger, and most recently reaffirmed late last year in Fresno County, that we cross-check a reasonable percentage fee with a lodestar, but that lodestar does not have to be a straight, unenhanced lodestar. The percentage fee can be less than the lodestar, it can be equal to it, but it can be greater than it, and what we look to is what Goldberger says we look to. We look to the risk of the case, and we look to the quality of the representation. Goldberger says the quality of the representation is best summed up by looking to the results. I think you said a moment ago you were gonna say like six factors about why this was, there were adequate findings of risk here that justified the hire. Well, and. You had only, I think you only got to one, which was that it was a securities class action, so I'm interested in the other. Sure, sure, and when Judge Buchwald referred back to the difficulties on the motion to dismiss, I submit that was shorthand for covering all the issues, in this case, scienter, problems with false statements, problems with loss causation, problems with materiality. My friend mentioned earlier. Is that accounted for in the lodestar? I mean, don't you just spend more hours on those things because it's more challenging? Your Honor, this court in Grinnell, many, many years ago, said that the enhancement to the lodestar is to compensate the attorneys for taking on the case, because the attorneys, their normal hourly rate is what they would be paid whether they win or lose. So given that the case has these features that make it more challenging, you're compensating them for the initial decision to take on the case as opposed to taking on another case. Is that? That's true. The way we should think about it? That's true, but we're also, it is the huge risk that these cases present. I mentioned earlier, $5.5 million of our firm's money, perhaps not a check, but attorney and staff time, put out with no guarantee of recovery in the sometimes hostile landscape that Judge Raji mentioned earlier, where a lot of these cases are dismissed. And I think the district court's reasoning in her fee award. And at the hearing. I'm sorry, please. Was there not a fairness hearing? There was a fairness hearing, yes. And the colloquy between Judge Buchwald and class counsel at the hearing, objector's counsel did not deign to go to that hearing. We've noted that perhaps had he, he could have challenged Judge Buchwald on some of the things that she was saying or not saying in his mind. A lack of specificity or of listing all of the reasons is not one of the claimed errors, as I understand, on appeal. I believe he's trying to say that the fee order could have been more explicit. And I've got the fee order here in front of me, and she specifically makes findings. And many of the findings go to both risk and counsel skill and the recovery that we got. A six to nine? Exactly, Your Honor. I know I got the math right, wrong at this point, but nevertheless, there is this view that about 20% is kind of the high end of a fee award from a common fund for a fund that exceeds 75 million. Isn't that what Fresno County says? And this was only a $50 million fund, though. We were at the very basement of- Well, it's 11 to 20%, I believe, is what is said in Fresno County. You are at 30%. And it's not clear to me why, what the reason is for that. I'm willing to hear the reason, but it's not apparent to me what it is in this case. That's why I wonder if we need more information from the judge. I don't think so, Your Honor. I think the fee award, the fee order, as I pointed out, is replete with findings. She doesn't necessarily drill down to each specific- I'm looking at the fee order. So she says, lead counsel pursued litigation on a contingent basis. This is paragraph 7E. And it involves complex factual and legal issues. But what else are the findings as to risk? Right up above that, lead counsel pursued the litigation on a contingent basis. Any fee award. It's just those two paragraphs of the order? Those two paragraphs of the order would go to risk. But then again- It's just complexity. But what is said would be true of most securities cases. And with respect to risk too, you're telling us it's true of most securities cases. And now we're considerably outside what Fresno County kind of talks about as an outside benchmark. But in this case, Your Honor, let's not forget, this is not a securities class action taking place solely in the United States on the East Coast or the West Coast. This is a securities class action that involves the horrendous accident over in Brazil. And yet the defendants here are based in Australia. The investigation that my friend mentioned earlier, this is not like Goldberg or where class counsel were able to piggyback, so to speak, on investigative efforts. If the Lodestar compensates you for all your work, it's now that you want a premium on top of that. And I'm not sure that whether it's in Cincinnati or in Sydney, if you're compensated for your travel and your work hours and all, I'm not sure that that factor weighs heavily in favor of a large enhancement. Two points. Number one, that premium is based on a two-prong analysis, risk and the result. We pointed out that a $50 million recovery here for the class was 20% of the estimated recoverable damages. By any yardstick you use in modern securities class actions over the last two decades, that is a fantastic recovery when ordinarily the ratio between those two numbers is 1.3 to 2.6. My second point is that Goldbergers... You know the problem with that is that for those who deal in this area of litigation all the time, it sounds like a fantastic result. To the man on the street, it might not sound so fantastic. And we are dealing with common funds where the payments mean less for the person's injured. Understood, and this is in the record and it's also in our briefing. Despite over 375,000 notices going out to the class, this fantastic result, our notice that we were gonna seek up to 30% of the fee in the class notice produced one objection to the fee, one objection. No institutional investor, everybody was apparently very satisfied with the amount of money they were getting. Thank you, your honors. Just to the last point, institutional investors, for whatever reason, rarely object to class action attorney's fees. I don't know why. It may be that they think that there's not enough in it for them to do that because it's difficult. Why should we be concerned if they're not concerned? Because you're in the position to be concerned. But I'm saying these are the people who, it's they who are losing the money from the 30%. Yes. And if they're not concerned, why should we be? It isn't that they're not concerned, they're not coming in to object to the fee. That doesn't mean that if they understood, it is difficult to object to fees and it's rare that you're able to prevail in objecting to them. It would not be surprising if they thought it wasn't worth their time. Yes, Judge LaHier, we are definitely saying that the district court didn't make the findings it needed to make to approve the fee in the first instance. Can we take the comments at the Fairness Hearing and other comments in the record into consideration in assessing whether Judge Buchwald here really fully considered or justified the increase? You could if there were any such comments. I think the comments that the judge made in the hearing are very, are cryptic almost and certainly don't rise to the level of explaining why such a high multiplier was necessary. I mean, we're talking about taking. Other individual, there are other individual things in their institutional claimants and individual ones, right? Correct, yes. And no objections from them either? That's right. In the entire class, it is stockholders, right? So yes, there would be individuals and there would be other institutions. Courts, we have to debrief this, courts do not like to put much stake in that because there is not a good reason to object to fees most of the time in the sense that it doesn't get you anywhere. If you have a $10 or $20 or $100 stake in the matter, going to object to the fee is going to increase your maybe five or $10, you know? And my client is a stockholder, but also is a lawyer who participates in these cases and could benefit from a ruling that would, that helps other cases. So in other words- If all we said was that the, in justifying the premium, the district court just needed to say more, how would that help you? Well, more in the sense that the district court would need to recognize and identify why there should be a 2.72 multiplier applied to fees that are already very high, between $400 and $1,000. So in other words, the judge should explain why I'm about to pay $2,800 to the top billing attorney on this case per hour for every single hour that attorney billed. That is necessary not just to help me, but to help subsequent courts, to help all of us to understand why this fee award was made. Because this is, as Judge Raju mentioned, this is the class's money. This is not, this is money that belongs to the class that was for their benefit. So that explanation needs to be made to the class, to other courts, and for posterity, and to help other courts make these fee awards. I think that is, I think that is absolutely necessary. And I think that the broad discretion that we talk about with district courts, when we say we give them very broad discretion on their fees, we will not interrupt what a district court has come to a conclusion on a fee. What is presupposed by that is that the district court has done a very good job of explaining it in the first place. So in other words, the district court has to exercise the discretion, having exercised it, that discretion, we give the district court a lot of deference. We don't come in and say, well, there's a figure that basically result with some vague explanation for it. We're gonna give that complete deference. That's not the way it goes. Thank you very much. Thank you. We'll reserve decision, we'll hear argument in the final matter on the calendar. Butcher v. Wendt, Cassell, Fitzgerald and Farnetti, 19-224. Thank you. Good morning, Mr. Butcher. Morning. Should I begin? Yes. I'm George Butcher, the plaintiff appellant. And I'm seeking to have the court reverse the order of the lower court, which granted the defendant's motions to dismiss. The overriding theme here is the failure to apply the proper standard to the motions to dismiss, which should have been faxed as alleged in the complaint, all reasonable inferences in favor of the plaintiff, ambiguities in the light most favorable to upholding the plaintiff's claim. The lower court did none of those things. And it in fact ignored the fax, misstated the fax and failed to apply the law properly to the fax in multiple respects. The defendants are actually asking the court, this court, not to apply the appropriate standard to their motions to dismiss and to view the allegations in the light most favorable to them, or to accept a set of counter allegations. I'm gonna begin by focusing on the RICO Honest Services and Section 1983 allegations. May I ask you what your RICO enterprise is here? Yes. It began... What is the enterprise? The enterprise is an association. Association, in fact? In fact, among, which initially was among and between Mr. Fitzgerald and Mr. Wendt, and grew to include, in my estimation, Mr. Cassell and ultimately Judge Finetti, or Mr. Finetti, because he participated in his private capacity, not in his official capacity. The plaintiff won before the arbitrator, and Judge Finetti reversed the award, but an appeal was filed. That's not action taken in his private capacity, right? Which action, ma'am? Dismissed the appeal. Oh, no, no, that was taken in his, yes, absolutely. You hear what his private action was? Yes. Okay. The Judge Finetti reversed, but that decision was ultimately reversed by the appellate division. So the plaintiff, the appellant, is the state court winner. But before this suit began, and after the appeal was, this suit began after the appeal was filed, but before the appellate division order was issued. Beyond being the winner, the lower court erred in applying the Rooker-Feldman Doctrine to defeat jurisdiction since the timing requirement of ExxonMobil wasn't met. The First, Eighth, Tenth, and Eleventh Circuits have applied the requirement in cases in which it wasn't met, and so that a doctrine did not apply. Each held the requirement isn't met and suits initiated before the state appellate process has ended. The lower court cited this circuit's opinions in Cho and Hoblock as supporting its decision to apply the doctrine. But those cases reflect the opposite view of the timing requirement. In Cho, the court emphasized that there were no further state court proceedings. In Hoblock, the court stated that the timing requirement is satisfied, quote, after the state suit has unequivocally terminated. So it was error for the court to apply the doctrine. Given the court's finding of no jurisdiction, no subject matter jurisdiction, no consideration has been given to the plaintiff's RICO allegations related to the Honest Services or Section 1983 allegations. The lower court used the doctrine as a basis for ignoring the detailed allegations and supporting circumstantial evidence of a conspiracy and agreement among Wendt, Cassell, and Frenetti beginning in December 2014 to manipulate the outcome of the petition to vacate proceedings that began eight months later. The pre-existing conspiracy and agreement involves an independent claim as described in Hoblock, albeit one from... Can you infer a pre-existing conspiracy and agreement based on the arguments they made before the court? Say it again, sir? You're inferring the existence of an agreement based on the arguments they made... No, I am not. Okay. So how do we know that there is an agreement? Okay. So I try to put this in a context that's out of this allegation of judicial corruption and exists in a more normal context like, say, terrorism. So Mr. Wendt took actions in December 2014, which at the time were inexplicable and seemingly irrational. Um, the arbitrator rejected the argument that he made. This is all detailed in my various documents. Um, the arbitrator rejected his argument. Nevertheless, Mr. Cassell made the same inexplicable and irrational argument in his, uh, brief associated with the beginning of the petition to vacate proceedings. Now, those things were identifiably inexplicable and seemingly irrational, so up to then, they were just mysterious. But when Judge Farnetti, in his official capacity, issued a decision that actually relied on the actions, the previously inexplicable actions of Mr. Wendt and Mr. Cassell, it became apparent that they were connected. Let me put that differently. When he took his actions, which was the creation of a fictional amendment to Mr. Wendt's contract, one that didn't exist and was absurd as a matter of practice, but which relied on Mr. Wendt's actions and Mr. Cassell's actions. So when Judge Farnetti took that action in his order, their previous actions were no longer inexplicable. There was a totally rational explanation for their actions, for which there was no other conceivable explanation, which was to facilitate what Judge Farnetti actually did. And in the complaint, I put this in the context of terrorism, where somebody takes an action that benefits them and is inexplicable or unknown, and it ultimately facilitates an action, an act of terrorism. In that case, it wouldn't be viewed as exceptional in any respect to infer that those things are connected and the actions of the party who benefited were intended to facilitate the ultimate act of... Why do you think that they were all in cahoots together? Correct. It's like DNA. So you, Mr. Butcher, have reserved one minute for rebuttal, so have a seat, and then we'll hear from the other side, and then we'll hear from you. What's my seven minutes? That was your eight minutes and 14 seconds. Okay. It's okay, though. Mr. Millman. Good morning, Your Honors. If it pleases the Court, my name is Daniel Millman, and I represent Appellee Brad Webb. Mr. The appellant challenges... One of the main grounds on which the appellant challenges the district court decision is on the grounds that it misapplied the Rooker-Feldman doctrine. Specifically, Mr. Butcher claims that he is now a state court winner because the Second Department has reversed Justice Fornetti's decision. The problem with Mr. Butcher's position in this regard is he is missing one critical fact. The Rooker-Feldman doctrine, that is a challenge, as Your Honors know, to the court's subject-matter jurisdiction. Accordingly, the question of whether or not the court has subject-matter jurisdiction is determined at the time that the case in federal court is filed. When it was filed, it was an appeal pending, right, in the state court action? Correct, Your Honor. How did you have a final state court action? Because it was a judgment, Your Honor, and the courts in this circuit have repeatedly held that the fact that an appeal is pending in state court does not mean that the Rooker-Feldman doctrine would not apply. And, you know, more importantly, the question of whether or not the proceedings ended, that is not... There is nothing in the jurisprudence of the Second Circuit that states that for Rooker-Feldman to apply that the judgment in the state court must be of the highest state court. As Mr. Butcher points out, three circuits have made that conclusion in interpreting the Supreme Court's instruction that it applies when state proceedings have ended, right? Right. However, Mr. Butcher... You think we should disagree with those three circuits? Correct, I do. And the Second Circuit does as well. You think we already have disagreed? Exactly, Your Honor. As I pointed out in my papers, number one, the... While the Second Circuit has not definitively ruled on that question, the district courts, and I cited the cases in the Eastern District of New York, Southern District of New York, and the District of Connecticut, have all rejected that position. And more importantly, the Second Circuit has indeed implicitly adopted that position in Vospring v. Accredited Home. The reason we have the Rooker-Feldman doctrine is to not interfere with the Supreme Court's certiorari jurisdiction over state court judgments, right? That's correct, Your Honor. So if you have state court proceedings where there's still an appeal pending, and so therefore it's not eligible for certiorari in the Supreme Court, why is there still interference with the Supreme Court's certiorari jurisdiction if we were to entertain that kind of a case? Because you are still, as the person filing the federal action, asking a federal court to reject a state court judgment. The fact that there's an appeal pending, Your Honor, there almost always is an appeal pending, because whenever there's a controversy... Okay, sorry. Yes, Your Honor, so whenever there's a controversy, you're often going to have parallel proceedings pending. The whole purpose of the Rooker-Feldman doctrine would be underlied and, um, uh, set aside. As several Eastern District of New York cases have pointed out, if we allowed someone to subvert the Rooker-Feldman doctrine... What happens now that the state court judgment was reversed and the ruling is in Mr. Butch's favor? Your argument is he should refile? Not even refile. Uh, for reasons I'll get into in a moment, but my position is with regard to that state court judge, obviously the state court... I ask that question because then the solution might be that you stay the federal action until the, uh, state appeal is decided. So that's why I need you to tell me... Sure. Why do you not think that... Are you urging refiling at this point? Absolutely not, and the reason, one of the many reasons, is that his case is devoid of merit. Not just based on the Rooker-Feldman, it is absolutely devoid of merit because he does not allege two predicate activities with regard to each defendant as required in a RICO case. He does not allege anything other than acts that are the product of an argument and a dispute between the same parties. We can't get to that, at least with respect to those claims that reflect an attack on the state court judgment subject to appeal. Uh, we can't get to that if, uh, we need to deal with the Rooker-Feldman issue first. Right? Correct, Your Honor. That's sort of the problem. And the Rooker-Feldman, uh, doctrine requires that the person filing the federal court action be a state court loser. That's really the one in dispute of the four requirements of the Rooker-Feldman doctrine. And the courts in the Second Circuit, uh, and as I noted, the Second Circuit implicitly itself has adopted the position that the fact that there is an appeal pending... When you say implicitly, implicitly in the context of Yes, Your Honor. Fosbury, so I think what you're saying is that in a footnote, uh, uh, we said that the, um, uh, one side did not argue, uh, Rooker-Feldman and, but implicitly since it's a matter of subject matter jurisdiction, that panel would have had to have dealt with the Rooker-Feldman issue. Uh, but we, we didn't. That's correct, Your Honor. One more thing I would add to that though, Your Honor, if I may. That's exactly what I was referring to as the footnote. However, in the main text, this court noted in that case that the first factor, state court loser, had been met. I grant you it did not go into detail on that and I also grant you that it was not the main issue. If the state court loser and files a claim, or, or, or files a case while an appeal is pending we'd have jurisdiction but if he then prevails on appeal the jurisdiction disappears or as long as he lost the proceeding that immediately precedes his filing in federal court there's always going to be subject matter jurisdiction. Well, I would vary that slightly, Your Honor. What I'm saying is that if you have a judgment, notwithstanding the fact that it's being appealed, if it is a judgment I'm not talking about as in Green v. Mattingly where you had a temporary order custodial order. I'm talking about a judgment. The fact that it is being appealed does not change the fact that the plaintiff and the... That's temporary. This is where Mr. Butcher misapplies The state court trial court judgment is also temporary if it's being appealed but it's final for purposes aside from the appeal. With all due respect, I would differ on that because of the fact... Yes. You cannot get certiorari to the Supreme Court, right? That's correct, Your Honor, but that's not the standard the Second Circuit applies and the fact that there is an appeal pending doesn't change the fact, provided you have a judgment that that is considered an end result. And this is where the Exxon case is misapplied by Mr. Butcher because the Second Circuit courts who have evaluated that have stated that in that case, that's a very different situation because no judgment had been issued prior to the filing of that Federal lawsuit in Exxon. That is a critical distinction and many cases in the Second Circuit have noted that distinction. So that is absolutely critical. So the Rooker-Feldman doctrine, the first segment of that, the first requirement that he be a state court loser is determined at the time that the federal case is filed. If the court did not have subject matter jurisdiction when it's filed the court doesn't... That question is determined at the time... Does the court continue to have subject matter jurisdiction or if the person who is a state court loser in the state trial court prevails on appeal are the courts then divested of subject matter jurisdiction? No, no, no, Your Honor. I would state it differently. The court never had subject matter jurisdiction. I understand. Yes. But does it, sorry, then does subject matter jurisdiction appear if he prevails on appeal? If the court did not have it in the first sentence, the court does not have it thereafter. But if he had first filed his case after the appeal then the doctrine wouldn't apply. So there wasn't jurisdiction over these claims, sorry, there wasn't But if he had filed the same claims after the appeal there would be because he was a state court winner. After the result of the appeal, the decision of the appeal, you mean? Yes. Yes, that would be a different situation. So he can refile. So even if it's dismissed for worker felony he can refile now because now subject matter jurisdiction has appeared because he prevailed on the appeal. I would respectfully submit that he cannot because of the fact that he does not make out any sufficient claims. If he filed That's not about whether we have jurisdiction, right? So he could file the case but then you would say it needs to be dismissed for failure. Yes. So put another way, the Rooker-Feldman if he refiles would not stop him but all of the other arguments that I noted in my paper. Yes, Your Honor. Thank you. Correct. Thank you. Good morning. I'm David Lawrence III. I'm an Assistant Solicitor General appearing on behalf of Mr. Lawrence. Okay. So Ms. Cassel? Your Honor, if you're going to wait for the questions as long as I see my hand All right. Thank you. Mr. Lawrence.   Justice Joseph Fornetti by the U.S. Supreme Court and the U.S. Supreme Court is protected by judicial immunity. The only act that Justice Fornetti took in support of the alleged Rigo conspiracy is to issue his decision and order in the state court proceeding. That is plainly a judicial act that is protected by judicial immunity. Furthermore, plaintiff's speculation that Justice Fornetti also aided defendant Wendt in the prior arbitration proceeding that was eight months before the state court article 75 proceeding was ever brought is entirely implausible. There is no reason for anybody to have suspected or believed that Justice Fornetti would ultimately preside in the article 75 proceeding. So it's not worthy of belief that Justice Fornetti would even have any motive to participate in the arbitration proceeding. Furthermore, under well established law, plaintiff cannot avoid judicial immunity by his unsupported allegation that Justice Fornetti conspired with the other defendants. Allegations of conspiracy Do you claim that Justice Fornetti knew either Mr. Wendt or the other person? I don't believe so, Your Honor, no. Do you think the decision he made in the case was irrational and couldn't be explained by anything besides the pre-existing agreement with the parties? I believe that the decision by Justice Fornetti was quite rational and relied on well established New York authorities that pay that has been earned cannot be later forfeited. The fact that the plaintiff here disagrees with that decision does not in any way establish a conspiracy or unlawful conduct by Justice Fornetti. It simply establishes that the plaintiff is a dissatisfied litigant, which is not an uncommon situation. Well, didn't he prevail on appeal? He did prevail on appeal, yes, Your Honor. If you'd like me to go to the Rooker-Feldman, is that where... Why did he accept the untimely... Isn't that the reason why he prevailed on appeal? Because the complaint was filed in an untimely fashion? Justice Fornetti reasoned that the the actual action was timely brought because it was brought within 90 days of the final arbitration award. Now, the appellate division ultimately disagreed and found that the action should have been brought within 90 days of the partial arbitration award. But Justice Fornetti relied on, again, well established law that only final decisions are appealable. So it's while the appellate division ultimately disagreed, that's in no way established that Justice Fornetti acted in some improper or unlawful manner. I just want to briefly address the Rooker-Feldman doctrine. I don't believe that the court has to mine in our favor on Rooker-Feldman in order to affirm as to Justice Fornetti because of the lack of plausibility of the claim and because of his judicial immunity. But I will say that the this court's action in Frostbrink and applying Rooker-Feldman whether in a state appeal pending makes sense. It's supported by the Ninth Circuit's decision in Marciano that I studied in my brief, where they reason that the lower federal courts lack the power in the jurisdiction to consider what are in effect appeals from state court judgments. The fact that somebody is taking essentially two tracks, that they're appealing to federal court and appealing to state court at the same time, should not defeat the applicability of Rooker-Feldman. Yes, it is a common situation, but So when we do Rooker-Feldman, it's not that we're avoiding parallel litigation. It's that we're trying to avoid interfering with the Supreme Court's certiorari jurisdiction over the state courts, right? Over the highest court of each state. I don't believe it's simply avoiding interference with the certiorari jurisdiction. I believe it's also recognizing that lower federal courts can't exercise what is in effect, certiorari jurisdiction, whether it, they can't review the decisions of state courts, regardless of whether it would interfere with the Supreme Court in some manner. If the court has no further questions, I'll ask that the court affirm the judgment below. Thank you. Mr. Butcher. I said that they were going to ask you to view the facts in the light most favorable to them, and they have. First of all, whole block is explicit as to what the timing requirement is. It says explicitly that the timing requirement is satisfied, meaning the doctrine applies, if the state suit has unequivocally terminated. It couldn't be more clear. And the Supreme Court is actually clear in ExxonMobil in saying that the suit actions to which it has applied the doctrine were those where the state proceedings have ended. So I commend the Eleventh Circuit decision to you because the logic of this is really not debatable in the way that it's being described. And with respect to the allegations against Judge Frenetti, you know, they're entitled to argue the facts. But what they're trying to do is get this court to deny me the opportunity to test the facts. The decision by Judge Frenetti was astounding. And I actually told Plaintiff's counsel, or Respondent's counsel, before they argued the appeal, not to even touch, not even to mention the timeliness argument. Because while we had the better decision, it wasn't an obviously corrupt decision on Judge Frenetti's part. There were two other bases that we had to win the appeal where there was no possibility that we could lose. And on that one, there was a mature, well-reserved decision. That concludes the final argument on today's argument calendar. Court is adjourned. Thank you.